UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

BARBARA E. SALAMON, M.D.,

                Plaintiff,

v.                                         **DECISION AND ORDER**
                                                      99-CV-048S

OUR LADY OF VICTORY HOSPITAL,
MICHAEL C. MOORE, M.D.,
FRANKLIN ZEPLOWITZ, M.D.,
JOHN F. REILLY, M.D.,
ALBERT J. DIAZ-ORDAZ, M.D., and
JOHN P. DAVANZO,

                Defendants.
_____

## I. INTRODUCTION

Pending before this Court are Defendants' motions for reconsideration (Docket Nos. 169, 175, 176) of this Court's March 30, 2012 Decision and Order denying Defendants' motions for summary judgment (Docket No. 168). Plaintiff has filed a response to Defendants' motions, and Defendants have filed reply papers. (Docket Nos. 179-187.)

## II. BACKGROUND

Plaintiff, a female gastroenterologist, commenced this action against Defendants Our Lady of Victory Hospital ("OLV") and physicians/administrators on January 21, 1999, and filed an amended complaint on March 5, 1999. (Docket Nos. 1, 5.) The amended complaint asserted eight causes of action. The first five alleged violations of antitrust law. The sixth and seventh causes of action alleged sexual harassment and a discriminatory OLV peer review process that resulted in a "reeducation" and mentoring requirement in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"),

and New York State Human Rights Law, N.Y. Exec. L. § 290 et. seq. ("NYSHRL"). The eighth cause of action asserted state law claims for tortious interference with contract and prospective business relations.

Plaintiff's first five claims were dismissed by the late Judge John T. Elfvin pursuant to Fed. R. Civ. P. 12(b)(6) by Order dated October 5, 1999. (Docket No. 20.)

Subsequently, on March 8, 2006, Judge Elfvin granted summary judgment to OLV on Plaintiff's Title VII and NYSHRL claims for lack of the required employee-employer relationship, and declined to exercise supplemental jurisdiction over her remaining state law claims. (Docket No. 127.)

In an amended decision, a panel of the Second Circuit vacated the entry of summary judgment and remanded the case for further consideration of Defendants' motions. (Docket No. 162.) Specifically, the Second Circuit found that "viewing the circumstances of this particular case in the light most favorable to the plaintiff, the non-moving party, [Plaintiff] has demonstrated a genuine factual conflict regarding the degree of control OLV exercised over her," and instructed that, on remand, the district court was to reweigh all of the thirteen factors set forth in Community for Creative Non-Violence v. Reid, 490 U.S. 730 (1989) to determine whether Plaintiff was an employee of the OLV for purposes of Title VII. Salamon v. Our Lady of Victory Hosp., 514 F.3d 217, 231 (2d Cir. 2008).

On remand, Defendants renewed their motions for summary judgment. On March 30, 2012, this Court denied summary judgment to Defendants on the ground that a question of fact existed as to whether Plaintiff was an employee of OLV, and set forth the following issues to be resolved at trial: (1) whether Plaintiff was an employee of OLV for

purposes of Title VII, and, if so, (2) whether Plaintiff was discriminated against and/or harassed by Defendants in violation of Title VII and NYSHRL; and (3) whether Defendants tortiously interfered with her prospective business relations. (Docket No. 168.)

Defendants now ask the Court to reconsider its previous Decision and Order. For the reasons that follow, Defendants' motions to reconsider are denied.

### III. DISCUSSION

#### A. Standard for Reconsideration

While the Federal Rules of Civil Procedure do not specifically provide for reconsideration, see Hamilton Plaintiffs v. Williams Plaintiffs, 147 F.3d 367, 371 n.10 (5th Cir. 1998), a party may move to amend or correct a judgment pursuant to Rule 59(e) or for relief from a judgment or order pursuant to Rule 60(b) of the Federal Rules of Civil Procedure.

Rule 59(e) permits a party seeking to alter or amend a judgment to file a motion "no later than 28 days after the entry of judgment." Fed. R. Civ. P. 59(e). If the Rule 59(e) motion is not timely filed then the motion to reconsider will be treated as a Rule 60(b) motion, which specifies that a court may relieve parties from final judgments, orders, or proceedings for, inter alia, mistake, inadvertence, surprise, excusable neglect, newly discovered evidence, fraud, or "any other reason justifying relief from the operation of the judgment." Fed. R. Civ. P. 60(b). A motion for reconsideration under Rule 60(b) "[is] generally granted only upon the showing of exceptional circumstances." Mendell v. Gollust, 909 F.2d 724, 731 (2d Cir. 1990), aff'd, 501 U.S. 115 (1991); Nemaizer v. Baker, 793 F.2d 58, 61–62 (2d Cir. 1986).

Under both Rules 59(e) and 60(b), the decision to grant or deny a motion for

reconsideration is within "the 'sound discretion of a district court judge.'" See Darcelin v. N.Y., No. 09–CV–5611, 2010 WL 723455, at *1 (E.D.N.Y. Feb. 26, 2010); Chamberlin v. Principi, No. 02 Civ. 8357, 2006 WL 647785, at *1 (S.D.N.Y. Mar.15, 2006), aff'd, 247 Fed. Appx. 251 (2d Cir. 2007) (quoting McCarthy v. Manson, 714 F.2d 234, 237 (2d Cir. 1983)). "The standard for granting [a motion for reconsideration] is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked–matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995). Reconsideration is not a proper tool to repackage and relitigate arguments and issues already considered by the court in deciding the original motion. Id.; U.S. v. Gross, No. 98-CR-0159, 2002 WL 32096592, at *4 (E.D.N.Y. Dec. 5, 2002). Nor is it proper to raise new arguments and issues. Gross, 2002 WL 32096592 at *4. Still, "reconsideration may be granted to correct a clear error, or prevent manifest injustice.'" Chamberlin, 2006 WL 647785 at * 1 (citing Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd., 956 F.2d 1245, 1255 (2d Cir. 1992)).

This Court has reviewed the parties' submissions and agrees with Plaintiff that Defendants have not established any of the recognized grounds to warrant reconsideration. To the extent that Defendants allege that this Court did not consider certain arguments for summary judgment, the Court will explain its rejection of those arguments below.

**B. The Alternative Grounds for Summary Judgment**

**1. Primary Jurisdiction**

Defendants have argued that Plaintiff's suit is barred under New York Public Health

Law § 2801-b because she did not first file a claim with the New York Public Health Council ("PHC"). (Docket No. 139 at 63-70.)

New York Public Health Law § 2801-b prohibits improper practices in hospital staff appointments and extension of privileges, and provides that an aggrieved physician may file a complaint with the PHC, which then investigates the complaint and determines whether there is a legitimate medical justification for revocation of a physician's privileges. N.Y. Pub. Health L. § 2801-b(1)-(3).

Defendants rely on Johnson v. Nyack Hosp., 964 F.2d 116 (2d Cir. 1992), for the proposition that a federal district court must refrain from hearing a damages claim by a physician where the legitimacy of the termination of the physician's privileges is dispositive, and the claim has not first been filed before the PHC. Johnson, 964 F.2d at 121; see also id. at 122-123 ("Primary jurisdiction allows an agency to pass on factual issues that require specialized, technical knowledge. Either a federal or state agency may have the requisite competence to serve this purpose."). However, as at least one district court in this Circuit has observed, "the PHC may only examine a very narrow range of issues, none of which involve the adjudication of constitutional rights." Franzon v. Massena Mem. Hosp., 977 F. Supp. 160, 166 (N.D.N.Y. 1997) (citing N.Y. Pub. Health L. § 2801–b(2)).

In Hamad v. Nassau County Medical Center, 191 F. Supp. 2d 286 (E.D.N.Y. 2000), the district court held that the doctrine of primary jurisdiction did not preclude the plaintiff-physician's constitutional claims arising under Title VII and the Age Discrimination in Employment Act:

> Here, the Court is presently confronted with constitutional claims which are related, in part, to the termination of Plaintiff's surgical privileges. In particular, Plaintiff claims that the

>revocation of his surgical privileges was the result of a discriminatory animus. However, unlike the facts in Johnson, whether or not defendants properly terminated plaintiff's privileges is not dispositive of the constitutional claims before this Court. Specifically, even if PHC finds that defendants had a legitimate reason for the termination of Plaintiff's surgical privileges, Plaintiff may still prevail in this action if he can prove that the proffered reasons were merely pretext for discrimination.

Hamad, 191 F. Supp. 2d at 298 (citation omitted).

This Court finds Hamad's reasoning persuasive. The crux of Plaintiff's lawsuit against OLV is that she was treated in a disparate manner from similarly-situated male physicians and subject to sexual harassment under separate state (NYSHRL) and federal (Title VII) statutes. New York Public Health Law § 2801-b simply does not address these types of allegations.

Accordingly, Defendants are not entitled to summary judgment based on Plaintiff's failure to file a complaint with the PHC.

**2.    Pretext**

Next, Defendants assert that Plaintiff's case fails because they had a legitimate, non-discriminatory reason for subjecting Plaintiff to the Quality Assurance ("QA") Program, which involved a peer review and monitoring of her practice at OLV. (Docket No. 139 at 70-79.) This Court, however, found a genuine issue of material fact as to whether those justifications (quality of patient care issues) were pretextual.

Viewing the evidence in the light most favorable to Plaintiff, a reasonable jury could find that the peer review process was discriminatory and that OLV acted in bad faith in conducting the QA Program with respect to Plaintiff. Defendant Moore, as Chief of the Gastroenterology Division, initiated the QA Program against Plaintiff shortly after she

rebuffed his alleged sexual advances. Despite Plaintiff's formal complaint to the OLV's administration regarding Moore's involvement in the process, Moore continued to participate to some extent and discussed Plaintiff's case with the physicians appointed to review her practice. (Docket No. 149 ¶¶ 282-284, 292, Ex. 55 at 14-17, 20-23, Ex. 116 at 61-63, 67-68.).

Plaintiff also submits evidence that one physician's external review as part of the peer review process was, in large part, contrary to OLV's appointed external reviewer's assessment. (Docket No. 149 ¶¶ 327-332 & Exhibits.) Plaintiff also sought every opportunity to bolster her case before the appropriate committees and took advantage of every level of appellate review available to her between 1996, when review of Plaintiff's practice was initiated, to 2003, when her staff privileges with OLV expired. Ultimately, when Plaintiff tried to comply with the reeducation requirement imposed by the OLV Medical Executive Committee in 2000, OLV failed to assign her a mentor that was not in direct competition with her practice and who was not directly or indirectly related to Defendants. (Affidavit of Susan Piver, Esq., dated 2/12/2001, ¶ 51, Ex. 40.) A reasonable jury could conclude from this evidence that Moore acted vindictively toward Plaintiff because she rejected his physical advances and because she made formal complaints with the OLV administration and with the Equal Employment Opportunity Commission.

This Court recognizes that the fact that an employee disagrees with the results of an adverse employment decision, or even has evidence that the decision was objectively incorrect, does not demonstrate, by itself, that the employer's proffered reasons are a pretext for termination. See, e.g., Rorie v. United Parcel Serv., Inc., 151 F.3d 757, 761 (8th Cir. 1998) (stating that "the relevant inquiry was whether [plaintiff] created a genuine issue

of material fact as to whether her discharge was gender-based and not whether her termination was reasonable" and noting that "[i]t is not the task of this court to determine whether [the investigator's] investigation was sufficiently thorough or fair.") It is this Court's view that Plaintiff has presented sufficient evidence to contradict Defendant's assertion that she was subject to the peer review process because she performed her job in a less than competent manner. See Nagle v. Marron, 663 F.3d 100, 105 (2d Cir. 2011) (in considering a motion for summary judgment, a district court is instructed not to "weigh evidence," but to "resolve all ambiguities and draw all inferences in favor of the non-moving party" so as to ascertain "whether any reasonable trier of fact would have to conclude that the evidence was so strongly in the [movant's] favor that there remained no genuine issue of material fact for it to resolve.")

This Court therefore finds summary judgment for Defendants inappropriate on the basis that Plaintiff failed to establish pretext.

### 3. Immunity

Defendants contend that they are entitled to immunity under the Health Care Quality Improvement Act, 42 U.S.C. §§ 11101, et seq., New York Education Law § 6527(5), and New York Public Health Law § 2805(m). (Docket No. 139 at 83-84.)

First, Defendants have no viable claim of immunity under the Health Care Quality Improvement Act. This statute was enacted "to improve the quality of medical care by restricting the ability of physicians who have been found to be incompetent from repeating this malpractice by moving from state to state without discovery of such finding," established a national reporting system, and provides immunity from monetary damages for persons who participate in the peer reviewing of suspect physicians. Imperial v.

Suburban Hosp. Ass'n, Inc., 37 F.3d 1026, 1028 (4th Cir. 1994) (citing 42 U.S.C. § 11101). This statute also expressly provides, inter alia, that the immunity provided therein does not apply to "damages under any law of the United States or any State relating to the civil rights of any person or persons, including the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et. seq. . . . ." 42 U.S.C. § 11111(a)(1)(D).

Likewise, both New York Education Law § 6527(3), and New York Public Health Law § 2805(m) provide exceptions to immunity where the persons performing the peer review process do not act in good faith. See N.Y. Educ. L. § 6527(3) (immunity only applies where "(a) such individual has taken action or made recommendations within the scope of his function and without malice, and (b) in the reasonable belief after reasonable investigation that the act or recommendation was warranted, based upon the facts disclosed."); N.Y. Pub. Health L. § 2805(m) ("The foregoing shall not apply to information which is untrue and communicated with malicious intent.")

Because there is an issue of fact with respect to whether Defendants had discriminatory and/or retaliatory animus in initiating the peer review proceedings against Plaintiff, they cannot benefit from the immunity provided by either state statute.

### 4. Statute of Limitations

Defendants argue that Plaintiff's claims that Defendant Moore sexually harassed her in 1994, 1995, and 1996, are time-barred under the limitations periods for Title VII and NYSHRL. See Van Zant v. KLM Royal Dutch Airlines, 80 F.3d 708, 712, 714 (2d Cir. 1996) (three-year statute of limitations applies to claims under the NYSHRL; Title VII actions must be commenced within 300 days of the alleged discriminatory action if a charge was previously filed with state employment agency). (Docket No. 139 at 86-90.)

Plaintiff does not dispute this assertion, nor does she seek to establish liability for Moore's conduct pre-dating January 21, 1996. Rather, Moore's alleged conduct after that date, which included offensive comments, sexual propositions, and misusing the peer review process against Plaintiff, gives rise to her claims against Moore. (Docket No. 151 at 44-45.)  As Plaintiff points out, she is not precluded from using Moore's prior similar acts as background evidence to support her timely claims of sexual harassment. National R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 103 (2002). Insofar as Plaintiff previously attempted to assert that the conduct occurring outside the statutory time period gives rise to a cause of action, such claims are now deemed abandoned and subject to dismissal.

Defendants are therefore not entitled to summary judgment on statute of limitations grounds.

### 5.     Hostile Work Environment

Defendants aver that the offensive remarks made by Moore to Plaintiff are insufficient to establish a hostile work environment. (Docket No. 139 at 90-96.)

To survive a summary judgment motion with respect to a claim of a hostile work environment, a plaintiff must provide sufficient evidence to create a genuine question of fact as to whether "her workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of her employment." Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993) (internal quotation marks and citation omitted). While there is no bright-line test as to the type of conduct that is required to give rise to a hostile work environment claim against an employer, courts should consider the following factors, which include: "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive

utterance; and whether it unreasonably interferes with an employee's work performance." Harris, 510 U.S. at 22-23.

Defendants urge this Court to conclude that Moore's comments were merely offensive utterances rather than physical or humiliating conduct. However, in considering the totality of the circumstances, a reasonable fact-finder could conclude that Moore's conduct had an effect on Plaintiff's working conditions. See Schiano v. Quality Payroll Sys., Inc., 445 F.3d 597 (2d Cir. 2006) (citing, inter alia, Harris, 510 U.S. at 25  (Scalia, J., concurring) ("[T]he test is not whether work has been impaired, but whether working conditions have been discriminatorily altered.")).

In her sworn affidavit, Plaintiff alleges that between 1996 and 1999, Moore made comments about her husband and son, stated that he liked her appearance, clothing, and the way she smelled, and told Plaintiff that he had sexual fantasies about her in the presence of other staff members. On one occasion, Plaintiff alleges that Moore confronted her in a hallway, and asked if she would be "available" for him on Sundays. Plaintiff's subsequent involvement in the Quality Assurance Program, which was initiated at Moore's request, resulted in the loss of patient referrals and damaged Plaintiff's professional reputation at OLV, thereby significantly altering Plaintiff's working conditions for the worse. Cf., e.g., Raniola v. Bratton, 243 F.3d 610, 621 (2d Cir. 2001) (finding a triable issue where plaintiff proffered evidence that, over the course of two and one-half years, she was subjected to "offensive sex-based remarks, disproportionately burdensome work assignments, workplace sabotage, and one serious public threat of physical harm"); but see Mormol v. Costco Wholesale Corp., 364 F.3d 54 (2d Cir. 2004) (no triable issue where plaintiff did not claim that the offending incidents were physically threatening or humiliating,

11

or that they interfered with her ability to do her job).

Based on the allegations noted above, and given the fact-specific nature of the determination, it is best left for the jury to decide whether the work environment is sufficiently hostile so as to constitute a change in the term, condition, or privilege of Plaintiff's employment. See Schiano, 445 F.3d at 605 (noting that the question is "'especially well-suited for jury determination,'" and even where the facts are undisputed "'summary judgment is appropriate only where application of the law to those undisputed facts will reasonably support only one ultimate conclusion'") (quoting Richardson v. N.Y. State Dep't of Corr. Serv., 180 F.3d 426, 438 (2d Cir. 1999)); see also id. at 608 ("Even assuming that ... reasonable jurors may ... disagree about whether these incidents would negatively alter the working conditions of a reasonable employee[,] ... the potential for such disagreement renders summary judgment inappropriate.") (internal quotation marks omitted).

Because Plaintiff has established a triable issue of fact with respect to her hostile work environment claim, Defendants are not entitled to summary judgment on this ground.

### 6. Vicarious Liability

Alternatively, Defendants argue that OLV is not vicariously liable for Moore's alleged conduct on the ground that he was not an employee of OLV but rather a physician in private practice with staff privileges at the hospital. (Docket No. 139 at 96-99.)

Assuming, arguendo, that Moore was not an employee of OLV when the alleged acts occurred, Defendants still are not entitled to summary judgment in their favor. The Second Circuit has left open the question of whether an employer can be liable for a non-employee's harassing conduct. Rather, the Circuit Court held that if such liability does in

fact exist, it is limited to instances in which the employer "provided no reasonable avenue of complaint or knew of the harassment but did nothing about it," Quinn v. Green Tree Credit Corp., 159 F.3d 759, 766 (2d Cir. 1998), abrogated in part on other grounds by, Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 122 (2002), and at least one district court in this Circuit has applied the test suggested in Quinn. See Lopes v. Caffe Centrale LLC, 548 F.Supp.2d 47, 53 (S.D.N.Y. 2008); Heskin v. Insite Advertising, Inc., No. 03–cv–2598, 2005 WL 407646, at *20–21 (S.D.N.Y. Feb. 22, 2005) (holding that an employer can be held liable for the harassing acts of non-employees if a plaintiff "adduce[s] evidence tending to show that [the employer] either failed to provide a reasonable complaint procedure or that it knew of [the] harassment by [a non-employee] and failed to take any action").

The record in this case demonstrates that Plaintiff reported the alleged harassment and unfair treatment in the peer review meetings to Albert Condino ("Condino"), OLV's former CEO, and Dr. Franklin Zeplowitz ("Zeplowitz"), OLV's Chief of Staff, Vice President of Medical Affairs, Chairman of the Medical Executive Committee and the Chief of OLV's Credentials, Quality Assurance and By-Laws Committees. According to Plaintiff, Condino and Zeplowitz assured Plaintiff that her claims would be investigated, yet Defendants did not conduct a proper investigation of Plaintiff's allegations against Moore and dismissed Plaintiff's complaints as unfounded. (Docket No. 149 ¶¶ 229-246, 252.) To the contrary, Defendants contend that OLV did investigate Plaintiff's complaints of sexual harassment, which included interviews of more than a dozen people, and those interviews yielded no person with independent knowledge of any complaints of harassment by or about Plaintiff with respect to Moore. (Piver Aff. ¶¶ 5, 11, Ex. 1, 2, 3). Plaintiff in turn states that she was

not interviewed, nor were certain witnesses interviewed who would have had knowledge of Moore's harassing conduct. Further, Plaintiff points out that the very person charged with investigating Plaintiff's claims of harassment, Susan Piver, Esq., was the same individual retained to prepare the hospital's quality review/disciplinary action against Plaintiff. Notably, Piver was not retained until April, 1997, several months after Plaintiff's complaints to OLV's administration.[1] (Docket No. 149 ¶¶ 277-299, 303-304.)

Accordingly, there is a disputed issue of fact as to whether OLV accepted or condoned Moore's alleged conduct, rendering summary judgment for Defendants unwarranted on this basis.

### 7. Individual Liability

The individual Defendants argue that they are entitled to summary judgment on all of Plaintiff's Title VII claims. (Docket No. 139 at 99.)

It is well settled in this Circuit that "'individuals are not subject to liability under Title VII.'" Sassaman v. Gamache, 566 F.3d 307, 315–16 (2d Cir. 2009) (quoting Patterson v. County of Oneida, 375 F.3d 206, 221 (2d Cir. 2004)). Plaintiff, in her memorandum of law dated August 28, 2009, acknowledges that Title VII imposes no liability against individual defendants, and thus abandoned any such claim she sought to assert in her amended complaint. (Docket No. 151 at 45-46.) Plaintiff does, however, maintain that the individual Defendants may be sued under NYSHRL, which provides that "it shall be an unlawful

---

[1] This Court notes and corrects a typographical error in the Decision and Order dated March 30, 2012. On page 7, the Decision states, "Plaintiff met with Albert Condino ("Condino"), OLV's former CEO,[ ] and Defendant Zeplowitz, in August, 1999, to advise them of Moore's sexual harassment and the unfair treatment she was receiving during the QA meetings." (Docket No. 168 at 7.) The date should read *1996*, which was three years prior to the commencement of this lawsuit in 1999. This typographical error did not, and does not, change this Court's analysis or decision.

discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or to attempt to do so." N.Y. Exec. L. § 296(6); see Tomka v. Seiler Corp., 66 F.3d 1295, 1313 (2d Cir. 1995) abrogated on other grounds, Burlington Indus., Inc. v. Ellerth, 524 U.S. 742 (1998). Additionally, "liability must first be established as to the employer/principal before accessorial liability can be found as to an alleged aider and abettor." DeWitt v. Lieberman, 48 F.Supp.2d 280, 293 (S.D.N.Y. 1999).

Due to the presence of genuine issues of fact precluding summary judgment in favor of Defendants on Plaintiff's discrimination and harassment claims, a reasonable jury could also find in Plaintiff's favor on her discrimination claims against individual defendants based on the NYSHRL under the aider/abettor theory.

### 8. Common Law Claims

Defendants contend that Plaintiff's eighth count in the amended complaint, alleging state law claims of tortious interference with contract and prospective business relations, fails as a matter of law. (Defs. Mem. 99-109.)

In Salamon v. Our Lady of Victory Hosp., 514 F.3d at 233, the Second Circuit remanded Plaintiff's common law claims, and this Court subsequently accepted supplemental jurisdiction without specifically ruling on the merits those claims. Rather, upon remand, this Court focused upon Plaintiff's claims arising out of Title VII and NYSHRL–in particular, whether Plaintiff raised a material issue of fact with regard to whether she was an employee of OLV. Indeed, the parties dedicated the majority of their briefs to analyzing the employee-employer relationship on summary judgment. Defendants now seek a more detailed analysis of Plaintiff's common law tortious interference claims, which Plaintiff has maintained in pro forma fashion up to this point.

At the outset, Plaintiff did not address her claim of tortious interference with contract on summary judgment, and that claim is therefore deemed abandoned. See Taylor v. City of New York, 269 F.Supp.2d 68, 75 (E.D.N.Y. 2003) ("Federal courts may deem a claim abandoned when a party moves for summary judgment on one ground and the party opposing summary judgment fails to address the argument in any way.") (citing Douglas v. Victor Capital Grp., 21 F.Supp.2d 379, 393 (S.D.N.Y. 1998) (collecting cases)).

With respect to her claim of tortious interference with business relations, Plaintiff must adequately allege that: "(1) the plaintiff had business relations with a third party; (2) the defendant interfered with those business relations; (3) the defendant acted for a wrongful purpose or used dishonest, unfair, or improper means; and (4) the defendant's acts injured the relationship." Catskill Dev., L.L.C. v. Park Place Entm't Corp., 547 F.3d 115, 132 (2d Cir. 2008). Additionally, "a claim for interference with advantageous business relationships must specify some particular, existing relationship through which plaintiff would have done business but for the allegedly tortious behavior." Kramer v. Pollock-Krasner Found., 890 F.Supp. 250, 258 (S.D.N.Y. 1995).

Defendants aver that Plaintiff's claim fails because of her inability to identify the specific prospective business relationship and her inability to demonstrate that but for Defendants' allegedly wrongful conduct, she would have entered into those potential business relationships. (Docket No. 139 at 103-109.)

Here, Plaintiff names three physicians whom she alleges stopped referring patients to her, and instead referred those patients to Moore as a result of the peer review proceedings initiated against Plaintiff at Moore's behest. (Docket No. 149 ¶¶ 556-59; Ex. 55, pp. 12-13.) There is at least some evidence of Moore's involvement with respect to

those physicians' referral practices shifting away from Plaintiff. (Docket No. 147, Ex. C at 282-285.)  Moreover, Plaintiff has raised a triable issue of fact as to whether the peer review process was brought against Plaintiff in bad faith and in a discriminatory manner. But see Mahmud v. Kaufmann, 358 Fed. Appx. 229, 2009 WL 4912180 (2d Cir. Dec. 21, 2009) (unpublished opinion) ("As a general rule, unless a defendant's conduct amount[s] to a crime or an independent tort, not alleged here, it satisfies [the thrid element] only if it is engaged in for the sole purpose of inflicting intentional harm on the plaintiff. . . . Mahmud offers no evidence to support her claim that the disciplinary action instituted against her was a sham . . . .") (internal quotations and citations omitted). Finally, Plaintiff has established that between 1996 and 2000, her referrals from other physicians diminished and that her gastroenterology practice was significantly reduced during that time period. (Docket No. 149 ¶¶ 556-59.)

Because Plaintiff has established a triable issue of fact on her common law claim of tortious interference with prospective business relations, Defendants are not entitled to summary judgment on this claim.

### 9. Defendant Diaz-Ordaz

Defendant Diaz-Ordaz, who has adopted Defendants' motions and memoranda in support of summary judgment, makes a separate argument for dismissal apart from those arguments common to all Defendants. Specifically, he maintains that his affidavits and submissions establish that dismissal of Plaintiff's claims against him is appropriate because he was not involved in the harassment alleged in the amended complaint. Rather, his participation was limited to reviewing Plaintiff's medical practice as part of the QA Program. (Docket No. 170 ¶¶ 6, 13-18.)

Based on this Court's determination that the individual Defendants, including Diaz-Ordaz, may be found liable after a trial under the "aider and abettor" theory of NYSHRL, Diaz-Ordaz has raised no ground justifying reconsideration of this Court's previous Decision and Order denying summary judgment with respect to him specifically.

## IV. CONCLUSION

After a review of those arguments not specifically discussed in its previous Decision and Order, this Court reiterates that summary judgment is inappropriate. As a result, Defendants have not demonstrated the extraordinary circumstances necessary for reconsideration.

A trial date will be set to decide: (1) whether Plaintiff was an employee of OLV for purposes of Title VII; and, if so, (2) whether Plaintiff was discriminated against and/or harassed by Defendants in violation of Title VII and NYSHRL; and (3) whether Defendants tortiously interfered with her contracts and prospective business relations. However, as this Court has previously suggested, the parties are urged to consider mediation to resolve this case.[2]

## V. ORDERS

IT HEREBY IS ORDERED, that Defendants' motions for reconsideration (Docket Nos. 169, 175, 176) are DENIED.

FURTHER, the parties shall appear before this Court on July 24, 2012 at 9:00

---

[2] See, e.g., Manual for Complex Litigation Second § 23.11(1985) ("Many more cases are concluded by settlement than by trial. This reflects the fact that most lawyers and litigants prefer a negotiated solution to the costs, time, and uncertainty inherent in trial. Because both the expense and risk of loss are magnified in complex cases, such actions are even more amenable to compromise than routine cases . . . . ")

a.m. for a status conference to set a trial date.

      SO ORDERED.

Dated:      June 23, 2012
               Buffalo, New York

                                          <u>/s/William M. Skretny</u>
                                          WILLIAM M. SKRETNY
                                                Chief Judge
                                      United States District Court